[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
The petitioner is a sentenced prisoner confined to the custody of the Commissioner of Correction pursuant to the following:
 1. A mittimus issued on June 2, 1998, in docket number 19-64882 by the Superior Court, G.A. 19, sentencing the petitioner to two (2) years for violation of General Statutes § 21a-279a;
 2. A mittimus issued on April 28, 1989, in docket number CR4-162091 by the Superior Court, Waterbury, sentencing the petitioner to a total effective sentence of twenty-five (25) years for violation of General Statutes § 53a-167c and 53a-169;
 3. A mittimus issued on April 28, 1989, in docket number CR4-156924 by the Superior Court, Waterbury, sentencing the petitioner to twenty (20) years for violation of General Statutes § 53a-134;
 4. A mittimus issued on April 28, 1989, in docket number CR4-156926 by the Superior Court, Waterbury, sentencing the petitioner to twenty (20) years for violation of General Statutes § 53a-134;
5. A mittimus issued on April 28, 1989, in docket number CR4-157554 by the Superior Court, Waterbury, sentencing the petitioner to one (1) year for violation of General Statutes § 53a-49; CT Page 7165
 6. A mittimus issued on April 28, 1989, in docket number CR4-162758 by the Superior Court, Waterbury, sentencing the petitioner to five (5) years for violation of General Statutes § 53a-136;
 7. A mittimus issued on April 28, 1989, in docket number CR4-162755 by the Superior Court, Waterbury, sentencing the petitioner to twenty (20) years for violation of General Statutes § 53a-134 (a)(2);
 8. A mittimus issued on April 28, 1989, in docket number CR4-162757 by the Superior Court, Waterbury, sentencing the petitioner to five (5) years for violation of General Statutes § 53a-172;
 9. A mittimus issued on April 28, 1989, in docket number CR4-124435 by the Superior Court, Waterbury, sentencing the petitioner to a total effective sentence of twenty-five (25) years for violation of General Statutes § 53a-32;
 10. A mittimus issued on April 28, 1989, in docket number CR4-134852 by the Superior Court, G.A. 4, sentencing the petitioner to three (3) years for violation of General Statutes § 53a-32. Resp't Return, at 1-2.
The petitioner brings this pro se petition for writ of habeas corpus, dated June 25, 1999, claiming that he was wrongfully put in segregation on September 15, 1998 and that on September 16, 1998 he was wrongfully given a Disciplinary Report indicating that he was involved in a conspiracy to convey "contraband/A" into the Garner facility. Resp't Ex. 1, at 1. The petitioner was given a copy of the Disciplinary Report and a notice of the hearing date of September 23, 1998. Neither the petitioner's advocate nor any of the correction officers involved in the investigation would reveal any information to the petitioner about this incident, claiming that all such infonnation was confidential.
The petitioner and his advocate were present at the disciplinary hearing. The petitioner entered a plea of not guilty but was found guilty by the hearing officer based on confidential information and the investigative report of the Department of Correction. The hearing officer, Lieutenant Magdalia Soto, testified at the habeas corpus trial that she had reviewed all the investigative information prior to the hearing, including the statement of a confidential informant who directly implicated the petitioner. The petitioner denied having any knowledge of this incident. As a result of the guilty finding, the following sanctions were imposed on the petitioner:
1. 90 days punitive segregation; CT Page 7166
2. 30 days confined to quarters;
3. 60 days loss of visits;
4. 90 days loss of good time.
The petitioner testified at the habeas corpus trial and admitted to the following disciplinary and criminal record while in the custody of the Department of Correction:
 1. On December 7, 1987, the petitioner pleaded guilty or was found guilty on a disciplinary report for intoxication by either marijuana, cocaine or heroin.
 2. On December 18, 1992, the petitioner pleaded guilty or was found guilty on a disciplinary ticket for intoxication by a drug, probably either marijuana, cocaine or heroin.
 3. On February 3, 1995, the petitioner was found guilty on a disciplinary report for intoxication by either marijuana, cocaine or heroin.
 4. On July 14, 1998, the petitioner pleaded guilty on a disciplinary report for intoxication by heroin or cocaine.
 5. On March 4, 1999, the petitioner pleaded guilty on a disciplinary report for conspiring to convey contraband into a correctional facility.
 6. On September 21, 2000, the petitioner pleaded guilty on a disciplinary ticket for intoxication by heroin.
Additionally, the petitioner was also convicted for escape in the first degree as a result of an escape from the Waterbury courthouse in which the petitioner overpowered two guards. The petitioner has also assaulted Department of Correction staff members at Cheshire Correctional Institution. Tr. (Feb. 8, 2002).
"The touchstone of due process is protection of the individual against arbitrary action of government." State v. Floyd, 217 Conn. 73, 87,584 A.2d 1157 (1991), quoting Wolff v. McDonnell, supra, 418 U.S. 539,558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "Under the federal constitution, it is well settled that inmates completely forgo certain of their constitutional rights and may be restricted in their exercise of certain other rights. The curtailment of certain rights is necessary, as CT Page 7167 a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security." (Internal citations omitted.) Washington v. Meachum, 238 Conn. 692, 716,680 A.2d 262 (1996), citing Wolff v. McDonnell, supra, 418 U.S. 555.
"Prison disciplinary proceedings . . . take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. . . . Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.
"It is against this background that disciplinary proceedings must be structured by prison authorities[.] . . . The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process." Wolff v. McDonnell, supra, 418 U.S. 561-2.
The procedural due process protection offered to inmates in disciplinary hearings requires that the inmate "receive (1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. . . . Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary CT Page 7168 board." (Internal citations omitted.) Jolley v. Commissioner ofCorrection, 60 Conn. App. 560, 561, 760 A.2d 146 (2000), citing Wolff v.McDonnell, supra, 418 U.S. 563-67.
Based upon the foregoing, this Court finds that the petitioner received all process that was due. The petitioner was given a copy of the Disciplinary Report and a notice of the hearing date. The petitioner did not avail himself of the opportunity to present witnesses and documentary evidence in his defense, as is indicated by the interview conducted five days prior to the disciplinary hearing by the petitioner's advocate. Resp't Ex. 1. The Disciplinary Process Summary Report demonstrates that a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action was provided to the petitioner. Id. The record before this Court shows that there was some evidence, derived from reliable confidential sources that cannot be disclosed, said non-disclosure additionally found by this Court to be consistent with institutional safety and correctional goals, that formed the basis for the prison disciplinary board's finding of guilt and the imposition of sanctions.
Accordingly, the petition seeking habeas corpus relief is denied.
BARRY, JUDGE TRIAL REFEREE